IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ANDRE PETERS, | § | |
| | § | No. 468, 2014 |
| Defendant Below- | § | |
| Appellant, | § | |
| | § | |
| v. | § | Court Below—Superior Court |
| | § | of the State of Delaware, |
| STATE OF DELAWARE, | § | in and for New Castle County |
| | § | Cr. ID 1007020835 |
| Plaintiff Below- | § | |
| Appellee. | § | |

Submitted: January 9, 2015
Decided: March 20, 2015

Before **HOLLAND**, **VALIHURA**, and **VAUGHN**, Justices.

## O R D E R

This 20th day of March 2015, after careful consideration of the parties' briefs and the record below, it appears to the Court that:

(1) The appellant, Andre Peters, filed this appeal from the Superior Court's denial of his first motion for postconviction relief under Superior Court Criminal Rule 61. We conclude that Peters' claims are untimely under Rule 61(i)(1) and that his claims of ineffective assistance of counsel do not establish a miscarriage of justice under Rule 61(i)(5). Accordingly, we affirm the Superior Court's judgment.

(2) The record reflects that Peters was arrested on August 6, 2010 and indicted on three counts of Robbery in the First Degree, four counts of

Possession of a Firearm During the Commission of a Felony, one count of Burglary in the First Degree, and one count of Conspiracy in the Second Degree. The charges against Peters stemmed from a home invasion robbery in the late evening hours of July 21, 2010. Three men forcibly entered a dwelling in which three adults and three children resided. One of the intruders threatened the occupants with a gun. The intruders stole money, cell phones, and prescription drugs. One of the intruders, Christopher Crawford, was an acquaintance of the one of the victims. Crawford was arrested two days later. During an interview with police, Crawford admitted to committing the home invasion with another man named "Dre." He told police that after the home invasion, he and Dre rented a room at the Econo-Lodge on Route 13. Police went to the motel and found that Peters had rented a room there at 12:50 AM on July 22, 2010. At trial, all three adult victims identified Peters as the intruder who threatened them with a gun.

(3) The jury convicted Peters of all charges. The Superior Court sentenced him to a total period of thirty years at Level V incarceration to be suspended after serving twenty-three years in prison for a period of probation. We affirmed Peters' convictions and sentence on direct appeal.[1] We issued the mandate following Peters' direct appeal on January 4, 2012.

---

[1] *Peters v. State*, 2011 WL 6201315 (Del. Dec. 13, 2011).

(4)  On January 7, 2013, Peters filed his first motion for postconviction relief, raising several claims of ineffective assistance of counsel.  In June 2013, Peters requested the appointment of counsel, which the Superior Court Commissioner granted.  In January 2014, Peters' appointed counsel filed a motion to withdraw under Superior Court Criminal Rule 61(e)(2), asserting that there were no arguable issues he could raise on Peters' behalf.  After considering postconviction counsel's motion to withdraw, Peters' issues, his trial counsel's affidavit, and the State's response thereto, the Commissioner issued a report recommending that Peters' motion for postconviction relief be denied and that counsel's motion to withdraw be granted.[2]  The Superior Court accepted the Commissioner's report and recommendation, granted counsel's motion to withdraw and denied Peters' motion for postconviction relief.  This appeal followed.

(5)  When reviewing the Superior Court's denial of postconviction relief, this Court first must consider the procedural requirements of Rule 61 before addressing any substantive issues.[3]  Rule 61(i)(1) bars any claim for postconviction relief that is not filed within one year of a final judgment of conviction.  A conviction becomes final when this Court issues the mandate

---

[2] *State v. Peters*, 2014 WL 1156876 (Del. Super. Mar. 18, 2014).

[3]*Younger v. State*, 580 A.2d 552, 554 (Del. 1990).

following a defendant's direct appeal.[4] In this case, the Court issued the mandate following Peters' direct appeal on January 4, 2012. Peters did not file his motion for postconviction relief until January 7, 2013, several days after the expiration of the one-year limitations period. Accordingly, in order to overcome the procedural bar of Rule 61(i)(1), Peters must establish a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity, or fairness of the proceedings leading to his conviction.[5]

(6) In his opening brief, Peters raises several constitutional claims asserting the ineffectiveness of his appointed counsel. Thus, even though the Superior Court did not find Peters' motion to be untimely under Rule 61(i)(1), there is no consequence to Peters "because the standard for analyzing claims of ineffective assistance of counsel in a motion for [postconviction] relief is the same" whether the motion meets the procedural requirements of the rule or not.[6] The *Strickland* standard applies to ineffective assistance of counsel claims regardless of whether the claim is

---

[4] *Staats v. State,* 961 A.2d 514, 517 (Del. 2008). We held in *Staats* that, "If the defendant filed a direct appeal of his convictions, the time period under Rule 61(i)(1) 'begins to run when the direct appeal process is complete, which for this Court, is the date of the issuance of the mandate under Supreme Court Rule 19.' " *Id.* (*quoting Jackson v. State,* 654 A.2d 829, 832–33 (Del.1995)).

[5] *See* Del. Super. Ct. Crim. R. 61(i)(5) (2013). This provision subsequently was amended in June 2014.

[6] *Staats v. State*, 961 A.2d at 518.

4

timely under Rule 61(i)(1) or is evaluated under Rule 61(i)(5) for a colorable claim of a miscarriage of justice.[7]

(7) Under *Strickland*, to prevail on a claim of ineffective assistance of counsel, a defendant must establish that (i) his trial counsel's representation fell below an objective standard of reasonableness; and (ii) but for counsel's unprofessional errors, the outcome of the trial would have been different.[8] The defendant must set forth and substantiate concrete allegations of actual prejudice.[9] Moreover, there is a "strong presumption" that counsel's representation was professionally reasonable.[10]

(8) Peters' first contention is that his trial counsel was ineffective for failing to investigate a potential witness, Gabrielle Vega, who would have testified that he was known to carry a BB gun and thus could have raised reasonable doubt as to the four firearm charges.[11] This contention is contradicted by trial counsel's affidavit. Both trial counsel and postconviction counsel indicated that they or their investigators spoke with

---

[7] *Id.*

[8] *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

[9] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).

[10] *Strickland v. Washington*, 466 U.S. at 689.

[11] The Superior Court Commissioner noted that, while a BB gun would not constitute a firearm, a hybrid gun that could be used as both a BB gun and a compressed air pellet gun *would* constitute a firearm. Thus, even assuming that Peters could have raised a reasonable doubt that the gun used during the home invasion was a BB gun, it would not end the analysis of whether the BB gun constituted a firearm.

5

Vega and both independently concluded that Vega would not assist Peters' defense. Trial counsel recalled that Vega was not cooperative and that she would have made a poor witness because she knew about Peters' prior felony criminal record. Trial counsel stated in his affidavit that, even if Vega could have testified that Peters was known to carry a BB gun, such testimony would not have been helpful because it would have been taken as an admission from Peters that he had committed the robbery and burglary offenses.

(9) Moreover, the State's evidence against Peters was overwhelming.[12] One victim testified that she felt the metal of the gun when Peters pressed it against her head. Another victim testified that he was familiar with guns and that he was able to read "Millenium 9MM" on the gun that Peters held to his head. Under the circumstances, Peters can establish neither cause nor prejudice under *Strickland*.

(10) Peters next contends that his trial counsel was ineffective for abandoning him during plea negotiations with the State and that counsel's abandonment prejudiced his ability to put on a defense challenging the four firearm offenses. In response to this allegation, defense counsel averred in

---

[12] In fact, the State decided not to call Crawford, Peters' codefendant, during its case-in-chief, even though Crawford had given three different sworn statements identifying Peters as the gunman. Instead, the State intended to reserve Crawford's testimony for rebuttal, in the event that Peters testified.

his affidavit that, prior to trial, Peters had twice rejected the State's plea offer with a recommended sentence of six years because he believed that the victims would not appear and testify at trial. On the morning of trial, February 1, 2011, the victims did appear. In response, defense counsel negotiated with the State's attorney and was able to obtain a continuance of the trial date until March 15, 2011. The State then renewed its prior plea offer with a six-year recommended sentence, expressly contingent upon Peters giving a truthful proffer identifying the third suspect and agreeing to testify against that person at trial.

(11) Counsel stated that he met with Peters and explained the State's offer in detail. Counsel told Peters that the decision to speak with the State was his alone and that any information he provided to the State could not be used against him during the State's case-in-chief but could be used against him if he testified in his own defense. Counsel explained to Peters that he had a court conflict that might require him to leave the scheduled proffer early. Peters did not object. Defense counsel was present during the first fifteen to twenty minutes of Peters' interview. Counsel stated in his affidavit that it was clear to him before he left the room that the State's attorney was not satisfied with Peters' proffer and did not believe Peters was being truthful. Peters did not identify the third participant. The State, therefore,

withdrew the six-year plea offer and instead offered Peters a twelve-year recommended sentence, which Peters rejected.

(12) Even if we assume without deciding that counsel's departure during the course of the interview was in error, Peters still cannot establish any prejudice under the second prong of *Strickland*. Peters does not allege that his proffer would have been different if counsel had been present during the course of the entire interview. The State made the determination that Peters' proffered statement did not satisfy the conditions of the plea offer and thus withdrew the offer. Peters does assert that the State would have accepted his proffer if counsel had been present. Moreover, because Peters chose not to testify at trial, none of the statements he made during the proffer were introduced against him at trial. Thus, we find no prejudice.

(13) Peters next claims that his trial counsel was ineffective because he failed to request a mistrial. The record reflects that, after closing arguments, the bailiff alerted the trial judge that one of the jurors reported, in the presence of the other jurors, that she had heard one of the victims mumbling in the back of the courtroom. The trial judge interviewed the juror on the record. The juror reported that the victim seemed unhappy but that she could not distinguish anything the victim was saying and that the victim's actions would not impact her ability to render a fair verdict in the

8

case. At counsel's request and in counsel's presence, the trial judge interviewed eight additional jurors who reported hearing the victim mumbling, either in the courtroom or during a lunch break. None of the jurors had heard the victim make any specific comment and all of the jurors reported that the victim's mumbling would not affect their ability to render an impartial verdict. Based on these interviews, defense counsel stated on the record that he was satisfied that no motion for a mistrial was warranted.

(14) Peters now contends that trial counsel was ineffective for failing to request that *all* of the jurors be questioned and for failing to request a mistrial because the trial judge did not determine that those jurors who were not interviewed would be able to decide the case fairly. We agree, however, with the Superior Court Commissioner's conclusion that it is unlikely "that the jurors who did not see or hear anything could have been unduly influenced by the jurors who heard mumbling [that] was not discernible."[13] Under the circumstances, Peters cannot establish any actual prejudice from the Superior Court's failure to interview all of the witnesses or from his counsel's failure to request a mistrial.

(15) Peters' final argument is that the attorney who was appointed to represent him in the postconviction proceedings was ineffective for filing a

---

[13] *State v. Peters*, 2014 WL 1156876, *7 (Del. Super. Mar. 18, 2014).

motion to withdraw.[14]  Under then-existing Superior Court Criminal Rule 61(e)(2), appointed counsel was obligated to file a motion to withdraw if counsel found Peters' Rule 61 claims "to be so lacking in merit that counsel [could not] ethically advocate" on his behalf.[15]  Given our conclusion that Peters' postconviction claims have no merit under *Strickland*, we find no error in counsel's decision to file a motion to withdraw, nor do we find any abuse of the Superior Court's discretion in granting counsel's motion.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ Karen L. Valihura
Justice

---

[14] In the motion he filed below, Peters also argued that his appellate counsel was ineffective on direct appeal for filing a motion to withdraw and no-merit brief under Supreme Court Rule 26(c).  He did not raise this claim in his opening brief on appeal. Accordingly, that claim is waived.  *Murphy v. State*, 632 A.2d 1150, 1152 (Del. 1993).

[15] Del. Super. Ct. Crim. R. 61(e)(2) (2013).  This provision was renumbered as Rule 61(e)(6), effective June 4, 2014.

10